Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL T. FRANKLIN**<br>163 Linden Street<br>Bridgewater, New Jersey 08807<br><br>**KAREN G. FRANKLIN**<br>163 Linden Street<br>Bridgewater, New Jersey 08807<br><br>Plaintiffs,<br><br>v.<br><br>**SERVIS ONE, INC. d/b/a BSI FINANCIAL SERVICES**<br>208 West State Street<br>Trenton, NJ 08608<br><br>**NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING**<br>℅ Corporation Service Company<br>Princeton South Corporate Center, Suite 160<br>100 Charles Ewing Blvd.<br>Ewing, NJ 08628<br><br>Defendants. | Case No.:<br><br>Judge:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Michael T. Franklin and Karen G. Franklin, by and through counsel, for their

Complaint against Servis One, Inc. d/b/a BSI Financial Services and New Penn Financial, LLC

d/b/a Shellpoint Mortgage Servicing, state as follows:

1

**PARTIES, JURISDICTION, AND VENUE**

1.       Plaintiffs Michael T. Franklin and Karen G. Franklin ("Plaintiffs" or the "Franklins") are the owners of the real property and improvements located at and commonly known as 163 Linden Street, Bridgewater, New Jersey 08807 (the "Home").

2.       Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained for all times relevant to the allegations of this Complaint.

3.       Defendant Servis One, Inc. d/b/a BSI Financial Services ("BSI") is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan"). A copy of the Mortgage is attached as ***Exhibit 1***.

4.       Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") was the servicer of the Loan for the relevant time period prior to the transfer of servicing to BSI effective November 10, 2017.

5.       BSI is doing business in the State of New Jersey as a business entity operating as a collection agency and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

6.       Jurisdiction of claims against Defendants is conferred by 28 U.S.C. § 1331, as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

7.       This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.41 of Regulation X.

8.      This action also arises out of BSI's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA).

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiffs purchased the Home for their primary residence within the District, Defendants do business in this District, and the conduct complained of took place primarily in this District.

10.      This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

## INTRODUCTION

11.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.      Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

13.      The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.      Defendants are subject to the aforesaid regulations and do not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor for the exemption for a "qualified lender", as defined in 12 C.F.R. § 617.700.

15.      Plaintiffs assert a claim for relief against Defendants for breaches of the specific rules under Regulation X as set forth, *infra*.

16.     Plaintiffs have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

17.     Plaintiffs also have a private right of action against BSI under the FDCPA pursuant to 15 U.S.C. §§ 1692, *et seq.* for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTUAL BACKGROUND

18.     On October 24, 2017, Shellpoint sent correspondence to Plaintiffs stating that servicing of the Loan was being transferred from Shellpoint to BSI effective November 10, 2017 (the "Shellpoint Notice of Transfer"). A copy of the Shellpoint Notice of Transfer is attached as *Exhibit 2*.

19.     The Shellpoint Notice of Transfer did not provide BSI's loan account number assigned to the Loan. *See Exhibit 2*.

20.     On October 27, 2017, Plaintiffs, through counsel, submitted a loss mitigation application to Shellpoint (the "Application"). A copy of the cover page of the Application is attached as *Exhibit 3*.

21.     On October 31, 2017, Shellpoint sent correspondence to Plaintiffs, at the Home, informing them that Shellpoint considered the loss mitigation application to be incomplete (the "Shellpoint Notice"). A copy of the Shellpoint Notice is attached as *Exhibit 4*.

22.     Shellpoint informed Plaintiffs that the required documents listed in the Shellpoint Notice must be received by Shellpoint by November 30, 2017. *See Exhibit 4*.

23.     On November 13, 2017, Plaintiffs, through counsel, submitted documents to Shellpoint satisfying the explicit request in the Shellpoint Notice (the "Shellpoint Submission"), since they did not have knowledge of a BSI account number. A copy of the cover page of the Shellpoint Submission is attached as ***Exhibit 5***.

24.     On November 24, 2017, two weeks after the transfer of the Loan, BSI sent a notice of transfer to Plaintiffs that provided the BSI Loan Account Number. A copy of this correspondence is attached as ***Exhibit 6***.

25.     BSI did not acknowledge receipt of the Plaintiffs' pending loss mitigation application at any time on or prior to November 27, 2017.

26.     On November 27, 2017, Plaintiffs, through counsel, submitted the loss mitigation documents previously submitted to Shellpoint to BSI (the "BSI Submission"). A copy of the cover page of the BSI Submission is attached as ***Exhibit 7***.

27.     On November 29, 2017, Plaintiffs, through counsel, sent a cease and desist and notice of attorney representation letter to BSI instructing BSI to send all correspondence directly to Plaintiffs' counsel (the "BSI Cease and Desist Letter"). A copy of the BSI Cease and Desist Letter is attached as ***Exhibit 8***.

28.     To this date, neither Plaintiffs nor Plaintiffs' counsel have received written notice from BSI acknowledging their receipt of the pending loss mitigation application or any related response.

29.     On or about November 6, 2017, Shellpoint submitted paperwork to the Somerset County Sheriff's Office (the "Sheriff's Office") to proceed with scheduling a foreclosure sale on the Plaintiff's home. A copy of this paperwork is attached as ***Exhibit 9***.

30.    The Sheriff's Office did not process the sale request until on or after February 8, 2018.

31.    During this interim Shellpoint and/or BSI failed to contact the Sheriff's Office to cancel the sheriff's sale, resulting in a foreclosure sale being scheduled on the Plaintiffs' home for March 6, 2018.

32.    On January 16, 2018, Plaintiffs, through counsel, sent to BSI a notice of error (the "NOE"), pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to comply with the requirements of 12 C.F.R. § 1024.41(k), 12 C.F.R. § 1024.41(b)(2)(i), and 12 C.F.R. § 1024.41(c). A copy of the NOE is attached as *Exhibit 10*.

33.    The NOE provided clear instructions to BSI as to how it should respond and the consequences if it failed to respond. *See Exhibit 10*.

34.    The NOE was sent to BSI at the address designated by BSI for receipt of notices of error, which is:

> BSI Financial Services
> Attn: Qualified Written Requests
> P.O. Box 517
> 314 S. Franklin Street
> Titusville, PA 16354

*See* BSI's pertinent website at: http://www.bsifinancial.com/borrowers_contactus.aspx (last visited Feb. 19, 2018). A printed version of this page is attached as *Exhibit 11*.

35.    BSI received the NOE on January 18, 2018. A copy of tracking information for the NOE is attached as *Exhibit 12*.

36.    BSI is not obligated to respond to the NOE until March 2, 2018.

37.     On January 17, 2018, Plaintiffs, through counsel, sent correspondence to BSI consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. § 1024.36 and a qualified written request pursuant to 12 U.S.C. § 2605(e)(1)(B) requesting detailed information related to BSI's servicing of the Loan ("RFI #1"). A copy of RFI #1 is attached as *Exhibit 13*.

38.     On January 17, 2018, Plaintiffs, through counsel, sent correspondence to BSI consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) and a qualified written request pursuant to 12 U.S.C. § 2605(e)(1)(B) requesting detailed information related to the current owner and servicer of the Loan ("RFI #2"). A copy of RFI #2 is attached as *Exhibit 14*.

39.     On January 17, 2018, Plaintiffs, through counsel, sent correspondence to BSI consisting of or otherwise comprising a request for payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3) ("RFI #3"). A copy of RFI #3 is attached as *Exhibit 15*.

40.     In each request sent to BSI, Plaintiffs provided clear instructions to BSI as to how it should respond and the consequences if it failed to respond. *See Exhibits 13-15*.

41.     Each request was sent to BSI at the address designated by BSI for receipt of requests for information, which is:

> BSI Financial Services
> Attn: Qualified Written Requests
> P.O. Box 517
> 314 S. Franklin Street
> Titusville, PA 16354

*See Exhibit 11.*

42.     BSI received RFI #1 on January 23, 2018. See tracking information attached as *Exhibit 16*.

43.     BSI is not obligated to respond to RFI #1 until March 7, 2018.

44.     BSI received RFI #2 and RFI #3 on January 20, 2018. See tracking information attached as *Composite Exhibit 17*.

45.     BSI provided timely responses to RFI #2 and RFI #3.

46.     BSI has scheduled a foreclosure sale of the Home for March 6, 2018.

47.     Due to the conduct of BSI and Shellpoint (collectively, "Defendants") Plaintiffs have lived with anxiety and stress caused by fear, becoming more concerning by the day, that they would lose the Home to foreclosure without ever receiving a fair review of their loss mitigation applications.

48.     Throughout this entire ordeal, Plaintiffs have simply wanted their loan servicers to conduct a review of their eligibility for loss mitigation options to save their home from risk of foreclosure so that they could responsibly resume their mortgage payments and start on the long road to rehabilitating their credit.

49.     Defendants' wrongful and willful actions have caused Plaintiffs to suffer great emotional distress driven by the fear and uncertainty about whether they will lose the Home.

50.     Defendants' actions have also caused Plaintiffs to spend money on paper, postage, and legal fees to compile and send requests for information to BSI and to subsequently draft and send notices of error to seek BSI's compliance with their obligations under Regulation X to obtain information related to the servicing of the Loan and to be reviewed for eligibility for

available loss mitigation options. Defendants' actions have also caused Plaintiffs to continue incurring additional attorneys' fees in pursuit of the loan modification.

51.     At the time of the filing of this Complaint, BSI has had more than Four Hundred Seventy Six (476) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/ complaintdatabase/).

52.     At the time of the filing of this Complaint, Shellpoint has had more than Five Hundred Eighty Four (584) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/ complaintdatabase/).

## COUNT ONE: AGAINST BSI AND SHELLPOINT
### VIOLATION OF 12 C.F.R. § 1024.41(k)

**[Failure to comply with 12 C.F.R. §§ 1024.41(c)(1) and
1024.41(c)(4) within thirty (30) days of a servicing transfer]**

53.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52, in their entirety, as if fully rewritten herein.

54.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

55.     12 C.F.R. § 1024.41(k)(1) provides:

(i) *Timing of compliance.* Except as provided in paragraphs (k)(2) through (4) of this section, if a transferee servicer acquires the servicing of a mortgage loan for which a loss mitigation application is pending as of the transfer date, the transferee servicer must comply with the requirements of this section for that loss mitigation application within the timeframes that were applicable to the transferor servicer based on the date the transferor servicer received the loss mitigation application. All rights and protections under paragraphs (c) through (h) of this section to which a borrower was entitled before a transfer continue to apply notwithstanding the transfer.

(ii) *Transfer date defined.* For purposes of this paragraph (k), the transfer date is the date on which the transferee servicer will begin accepting payments relating to the mortgage loan, as disclosed on the notice of transfer of loan servicing pursuant to § 1024.33(b)(4)(iv).

56.   12 C.F.R. § 1024.41(k)(3) provides:

*Complete loss mitigation applications pending at transfer.* If a transferee servicer acquires the servicing of a mortgage loan for which a complete loss mitigation application is pending as of the transfer date, the transferee servicer must comply with the applicable requirements of paragraphs (c)(1) and (4) of this section within 30 days of the transfer date.

57.   Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(k)

provides that "[f]or purposes of § 1024.41(k), a loss mitigation application is pending if it was

subject to § 1024.41 and had not been fully resolved before the transfer date."

58.   Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §

1024.41(k)(1) provides:

i.    In connection with a transfer, *a transferor servicer must timely transfer, and a transferee servicer must obtain from the transferor servicer, documents and information submitted by a borrower in connection with a loss mitigation application, consistent with policies and procedures adopted pursuant to § 1024.38(b)(4). A transferee servicer must comply with the applicable requirements of § 1024.41 with respect to a loss mitigation application received as a result of a transfer, even*

10

*if the transferor servicer was not required to comply with §* *1024.41* with respect to that application (for example, because § 1024.41(i) precluded applicability of § 1024.41 with respect to the transferor servicer). If an application was not subject to § 1024.41 prior to a transfer, then for purposes of § 1024.41(b) and (c), a transferee servicer is considered to have received the loss mitigation application on the transfer date. Any such application is subject to the timeframes for compliance set forth in § 1024.41(k).

ii.  *A transferee servicer must, in accordance with §* *1024.41(b)(1), exercise reasonable diligence to complete a* *loss mitigation application, including a facially complete* *application, received as a result of a transfer*. In the transfer context, reasonable diligence includes ensuring that a borrower is informed of any changes to the application process, such as a change in the address to which the borrower should submit documents and information to complete the application, as well as ensuring that the borrower is informed about which documents and information are necessary to complete the application.

iii.  *A borrower may provide documents and information* *necessary to complete an application to a transferor servicer* *after the transfer date. Consistent with policies and* *procedures maintained pursuant to § 1024.38(b)(4), the* *transferor servicer must timely transfer, and the transferee* *servicer must obtain, such documents and information*.

Emphasis added.

59.  Comment 2 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(k)(1) provides:

For purposes of § 1024.41(c) through (h), a transferee servicer must consider documents and information that constitute a complete loss mitigation application for the transferee servicer to have been received as of the date such documents and information were received by the transferor servicer, even if such documents and information were received by the transferor servicer after the transfer date.

60.    On or about November 13, 2017, Plaintiffs, through counsel, submitted the Shellpoint Submission to Shellpoint. *See Exhibit 5*.

61.    Shellpoint received the Shellpoint Submission on or about November 13, 2017.

62.    The Shellpoint Submission rendered Plaintiffs' loss mitigation application facially complete pursuant to 12 C.F.R. § 1024.41(c)(2)(iv) as the Shellpoint Submission included all missing documents and information required by the Shellpoint Notice. *See Exhibits 4-5*.

63.    Pursuant to 12 C.F.R. § 1024.41(k), BSI was to obtain the Application from Shellpoint and complete a review of the Application to determine whether Plaintiffs' eligibility for any and all loss mitigation options available to Plaintiffs and provide written notice to Plaintiffs as to which loss mitigation options Plaintiffs qualified, if any, within thirty (30) days of November 13, 2017, that is, on or before December 13, 2017.

64.    Neither Plaintiffs' nor their counsel has received any response to the Application or Shellpoint Submission to date.

65.    BSI has failed to exercise reasonable diligence in completing the Application.

66.    On January 16, 2018, Plaintiffs, through counsel, sent the NOE to BSI. *See Exhibits 10, 12*.

67.    The NOE alleged that BSI failed to comply with the requirements of 12 C.F.R. § 1024.41(k), 12 C.F.R. § 1024.41(b)(2)(i), and 12 C.F.R. § 1024.41(c). *See Exhibit 10*.

68.    On January 17, 2018, Plaintiffs, through counsel, sent to BSI RFI#1, RFI #2, and RFI #3 to BSI. *See Exhibits 13-17*

69.    BSI's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

70.     In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(k) directly and proximately caused Plaintiffs to incur actual damages including, but not limited, to attorneys' fees and expenses in researching, drafting, and sending the NOE in an attempt to have BSI properly acknowledge and review the Application and Shellpoint Submission and RFI #1, RFI #2, and RFI #3 to inquire into BSI's servicing of the Loan.

71.     As a result of BSI's actions, BSI is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

72.     Pursuant to 12 C.F.R. § 1024.41(k), Shellpoint was obligated to timely transfer the Application and Shellpoint Submission.

73.     Shellpoint failed to timely transfer the Application and/or Shellpoint Submission as BSI has failed to acknowledge or respond to the Application or the Shellpoint Submission.

74.     In addition to the damages outlined, *supra*, Shellpoint's violation of 12 C.F.R. § 1024.41(k) directly and proximately caused Plaintiffs to incur actual damages including, but not limited, to attorneys' fees and expenses in researching, drafting, and sending the NOE in an attempt to have BSI properly acknowledge and review the Application and Shellpoint Submission.

75.     As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages, costs, and attorneys' fees.

## COUNT TWO: AGAINST BSI
## VIOLATION OF 12 C.F.R. § 1024.41(b)(2)(i)

**[Failure to timely and properly notify a borrower
of receipt of a loss mitigation application submission]**

76.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52, in their entirety, as if fully rewritten herein.

77.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

78.     12 C.F.R. § 1024.41(b)(2)(i) provides:

If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

(A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and

(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

79.     12 C.F.R. § 1024.41(c)(2)(iv) provides that "[a] loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section."

80.     On or about November 27, 2017, Plaintiffs, through counsel, sent the BSI Submission to BSI. *See Exhibit 7.*

81.     BSI received the BSI Submission on or about November 27, 2017.

82.     Upon receipt of the BSI Submission including all missing documents and information required by the Shellpoint Notice, BSI was in possession of a facially complete application pursuant to 12 C.F.R. § 1024.41(c)(2)(iv). *See Exhibits 4, 7*.

83.     Within five (5) business days of November 27, 2017, that is, on or before December 4, 2017, BSI was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to Plaintiffs.

84.     On November 29, 2017, Plaintiffs, through counsel, sent the BSI Cease and Desist Letter to BSI. *See Exhibit 8*.

85.     BSI failed to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to Plaintiffs' on or before December 4, 2017.

86.     Neither Plaintiffs' nor their counsel have received any acknowledgment of the BSI Submission to date.

87.     On January 16, 2018, Plaintiffs, through counsel, sent the NOE to BSI. *See Exhibits 10, 12*.

88.     The NOE alleged that BSI failed to comply with the requirements of 12 C.F.R. § 1024.41(k), 12 C.F.R. § 1024.41(b)(2)(i), and 12 C.F.R. § 1024.41(c). *See Exhibit 10*.

89.     On January 17, 2018, Plaintiffs, through counsel, sent to BSI RFI#1, RFI #2, and RFI #3. *See Exhibit 13-17*.

90.     BSI's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

91.     In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused Plaintiffs to incur actual damages including,

but not limited, to attorneys' fees and expenses in researching, drafting, and sending the NOE in

an attempt to have BSI properly acknowledge and review the BSI Submission and RFI #1, RFI

#2, and RFI #3 to inquire into BSI's servicing of the Loan.

92.     As a result of BSI's actions, BSI is liable to Plaintiffs for actual damages,

statutory damages, costs, and attorneys' fees.

**COUNT THREE: AGAINST BSI**
**VIOLATION OF 12 C.F.R. § 1024.41(c)**

**[Failure to review a complete application within thirty (30) days]**

93.     Plaintiffs restate and incorporate all of their statements and allegations contained

in paragraphs 1 through 52, in their entirety, as if fully rewritten herein.

94.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the

provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

95.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable

diligence in obtaining documents and information to complete a loss mitigation application."

96.     12 C.F.R. § 1024.41(c)(2)(iv) provides:

> A loss mitigation application shall be considered facially complete
> when a borrower submits all the missing documents and
> information as stated in the notice required under paragraph
> (b)(2)(i)(B) of this section, when no additional information is
> requested in such notice, or once the servicer is required to provide
> the borrower a written notice pursuant to paragraph (c)(3)(i) of this
> section. If the servicer later discovers that additional information or
> corrections to a previously submitted document are required to
> complete the application, the servicer must promptly request the
> missing information or corrected documents and treat the
> application as complete for the purposes of paragraphs (f)(2) and
> (g) of this section until the borrower is given a reasonable
> opportunity to complete the application.

97.   12 C.F.R. § 1024.41(c)(1) provides:

[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

98.   On or about November 27, 2017, Plaintiffs, through counsel, sent the BSI Submission to BSI. *See Exhibit 7.*

99.   BSI received the BSI Submission on or about November 27, 2017.

100.   Upon receipt of the BSI Submission including all missing documents and information required by the Shellpoint Notice, BSI was in possession of a facially complete application pursuant to 12 C.F.R. § 1024.41(c)(2)(iv). *See Exhibits 4, 7.*

101.   Therefore, as of November 27, 2017, BSI was obligated to review the Application in accordance with the requirements of 12 C.F.R. § 1024.41(c)(1) within thirty (30) days, that is, on or before December 27, 2017.

102.   On November 29, 2017, Plaintiffs, through counsel, sent the BSI Cease and Desist Letter to BSI. *See Exhibit 8.*

103.   BSI failed to send the written notice required by 12 C.F.R. § 1024.41(c)(1)(ii) to Plaintiffs' on or before December 4, 2017.

104.   Neither Plaintiffs' nor their counsel has received any response to the BSI Submission to date.

105.   On January 16, 2018, Plaintiffs, through counsel, sent to BSI the NOE. *See Exhibit 10, 12*.

106.   The NOE alleged that BSI failed to comply with the requirements of 12 C.F.R. § 1024.41(k), 12 C.F.R. § 1024.41(b)(2)(i), and 12 C.F.R. § 1024.41(c). *See Exhibit 10*.

107.   On January 17, 2018, Plaintiffs, through counsel, sent to BSI RFI#1, RFI #2, and RFI #3. *See Exhibits 13-17*

108.   BSI's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

109.   In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(c) directly and proximately caused Plaintiffs to incur actual damages including, but not limited, to attorneys' fees and expenses in researching, drafting, and sending the NOE in an attempt to have BSI properly acknowledge and review the BSI Submission and RFI #1, RFI #2, and RFI #3 to inquire into BSI's servicing of the Loan.

110.   As a result of BSI's actions, BSI is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: AGAINST BSI
## VIOLATION OF 15 U.S.C. § 1692, et seq.

111.   Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52, in their entirety, as if fully rewritten herein.

112.    BSI took the actions described, *supra*, in an attempt to collect a debt represented by the Loan.

113.    The FDCPA, 15 U.S.C. § 1692d, provides, inter alia, that a Debt Collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

114.    The FDCPA, 15 U.S.C. § 1692e, provides, inter alia, that a Debt Collector may not use any false, deceptive, or misleading representation or means in connection with the debt collection.

115.    The FDCPA, 15 U.S.C. § 1692e(5), provides, inter alia, that a Debt Collector may not threat to take any action that cannot legally be taken or that is not intended to be taken.

116.    The FDCPA, 15 U.S.C. § 1692f, provides, inter alia, that a Debt Collector may not use any unfair or unconscionable means to collect or attempt to collect the alleged debt.

117.    BSI's actions, in causing the foreclosure sale to be scheduled on Plaintiffs' home while not properly reviewing their application, is conduct the natural consequence is to harass, oppress, or abuse the Plaintiffs in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

118.    BSI's actions, in threatening the Plaintiffs to move forward with the sale of their home without properly reviewing the application in contravention of federal RESPA guidelines, is a violation of 15 U.S.C. § 1692e(5).

119.    BSI's actions, in causing the foreclosure sale to be scheduled on Plaintiffs' home while not properly reviewing their application, is an unfair and unconscionable means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692f.

120.    As a result of BSI's actions, BSI is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FIVE: AGAINST BSI AND SHELLPOINT
## VIOLATIONS OF 12 C.F.R. § 1024.41(g)

**[Moving for order of sale while complete loss mitigation application pending]**

121.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52, in their entirety, as if fully rewritten herein.

122.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

123.    12 C.F.R. § 1024.41(g) provides:

If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless

(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option.

124.    On or about November 13, 2017, Plaintiffs, through counsel, submitted the Shellpoint Submission to Shellpoint. *See Exhibit 5.*

125.    Shellpoint received the Shellpoint Submission on or about November 13, 2017.

126.    On or about November 27, 2017, Plaintiffs, through counsel, sent the BSI Submission to BSI. *See Exhibit 7.*

127.    The Shellpoint Submission rendered Plaintiffs' loss mitigation application facially complete pursuant to 12 C.F.R. § 1024.41(c)(2)(iv) as the Shellpoint Submission included all missing documents and information required by the Shellpoint Notice. *See Exhibits 4, 5.*

128.    Pursuant to 12 C.F.R. § 1024.41(k), BSI was to obtain the Application from Shellpoint and complete a review of the Application to determine whether Plaintiffs' eligibility for any and all loss mitigation options available to Plaintiffs and provide written notice to Plaintiffs as to which loss mitigation options Plaintiffs qualified, if any, within thirty (30) days of November 13, 2017, that is, on or before December 13, 2017.

129.    Shellpoint failed to timely transfer the Application and/or Shellpoint Submission and notify BSI to cancel the pending sheriff sale request as the Application was complete as of November 27, 2017, well before the sheriff's sale was actually scheduled.

130.    If Shellpoint did transfer the Application and Shellpoint Submission to BSI, then BSI failed to cancel the pending sheriff's sale request as the Application was complete as of November 27, 2017, well before the sheriff's sale was actually scheduled.

131.    BSI received the BSI Submission on or about November 27, 2017.

132.    Upon receipt of the BSI Submission including all missing documents and information required by the Shellpoint Notice, BSI was in possession of a facially complete application pursuant to 12 C.F.R. §§ 1024.41(c)(2)(iv) and 1024.41(g). *See Exhibits 4, 7.*

133.    At no point between November 27, 2017 and the present has BSI sent a notice to the Plaintiffs informing them they are not eligible for any loss mitigation options.

134.    BSI's actions, in failing to cancel the pending sheriff's sale request, thereby causing the scheduling of the sheriff's sale on Plaintiffs' home before reviewing the Plaintiffs' loan modification application and sending them the notice required under 12 C.F.R. § 1024.41(g), constitutes a violation of 12 C.F.R. § 1024.41(g).

135.    BSI's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

136.    BSI's actions proximately caused the Plaintiffs to incur actual damages including, but not limited to, attorneys' fees and expenses in researching, drafting, and sending the NOE in an attempt to have BSI properly acknowledge and review the BSI Submission and RFI #1, RFI #2, and RFI #3 to inquire into BSI's servicing of the Loan, and attorneys' fees and expenses in otherwise the continued pursuit of the instant loan modification application.

137.    As a result of BSI's actions, BSI is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT SIX: AGAINST BSI AND SHELLPOINT
## VIOLATION OF N.J.S.A. § 56:8-2

138.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52, in their entirety, as if fully rewritten herein

139.    The Consumer Fraud Act ("CFA"), **NJSA § 56:8-2** prohibits "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…"

140.    In the operation of their businesses, BSI has engaged in the use of unconscionable commercial practices, specifically, causing a sheriff's sale to be scheduled on the Plaintiffs' home despite being prohibited to do so under the regulations set forth in 12 C.F.R. § 1024.41, described *supra*.

141.    BSI's unconscionable and/or unlawful commercial practice caused Plaintiffs to incur actual damages including, but not limited, to attorneys' fees and expenses in researching, drafting, and sending the NOE in an attempt to have BSI properly acknowledge and review the BSI Submission and RFI #1, RFI #2, and RFI #3 to inquire into BSI's servicing of the Loan, and attorneys' fees and expenses incurred in the continued pursuit of a loan modification with BSI, constituting an ascertainable loss the Plaintiffs suffered.

142.    Shellpoint failed to timely transfer the Application and/or Shellpoint Submission as BSI has failed to acknowledge or respond to the Application or the Shellpoint Submission, constituting an unconscionable or unlawful commercial practice.

143.    In addition to the damages outlined, *supra*, Shellpoint's violation of the CFA directly and proximately caused Plaintiffs to incur actual damages including, but not limited, to attorneys' fees and expenses in researching, drafting, and sending the NOE in an attempt to have BSI properly acknowledge and review the Application and Shellpoint Submission.

144.    As a result of BSI's actions, BSI is liable to Plaintiffs for treble actual damages, and attorneys' fees.

145.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for treble actual damages, and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Defendants BSI and Shellpoint, as follows:

A.    A finding that BSI and Shellpoint violated 12 C.F.R. § 1024.41(k);

B.    A finding that BSI violated 12 C.F.R. § 1024.41(b)(2)(i);

C.    A finding that BSI violated 12 C.F.R. § 1024.41(c);

D.    A finding that BSI violated 15 U.S.C. § 1692;

E.    A finding that BSI violated 12 C.F.R. § 1024.41(g);

F.    A find that BSI and Shellpoint violated N.J.S.A. § 56:8-2

G.    Awarding Plaintiffs treble actual damages against Defendants in an amount to be determined at trial;

H.    Awarding Plaintiffs statutory damages against BSI in an amount to be determined at trial;

I.    Awarding Plaintiffs costs and reasonable attorneys' fees; and

J.    Granting such other and further relief as is just and proper.


Respectfully submitted:

/s/ Javier L. Merino
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Michael T. Franklin
and Karen G. Franklin*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
DannLaw
*Counsel for Plaintiffs Michael T. Franklin and Karen G. Franklin*